ETHEL FINLEY, Petitioner-Appellee, *v.* BILL FINLEY, Respondent-Appellant.

Fifth District    No. 78-264

Opinion filed July 13, 1979.—Rehearing denied August 14, 1979.

G. MORAN, P. J., specially concurring.
KARNS, J., dissenting.

David J. Letvin, of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, and Richard A. Cary, of Wham and Wham, of Centralia, for appellant.

David L. Sauer, of Lackey and Lackey, of Centralia, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Respondent appeals from an order of the circuit court of Marion County entering judgment against him for accrued child support in an action brought by his former wife, petitioner. He asserts three issues on appeal: (1) whether section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(c)) prohibits the entry of a judgment for delinquent child support accruing prior to the effective date of the Act where the cessation of payment was predicated upon the emancipation of the children; (2) whether such judgment is precluded by laches or equitable estoppel; and (3) whether the trial court abused its discretion in awarding interest on delinquent support.

The marriage of respondent and petitioner was terminated by a decree of divorce on October 4, 1965. Petitioner was granted custody of the four children: Billy Irvin, age 16; Glenda Darlene, age 12; Terry Lee, age 7, and Patty Jean, age 4. She also was to receive $30 per week child support from respondent. The manner and duration of payment was specified in the decree as follows:

> "[T]he defendant shall pay to the Clerk of this Court who in turn shall pay the plaintiff herein for the use, support and maintenance of said minor children the sum of Thirty ($30.00) Dollars per week, said payments to start on Friday, October 8, 1965, and continue until further order of this court."

When the oldest son, Billy Irvin, entered the Army in 1966 respondent made a *pro rata* reduction of $7.50 in his child support payment. He continued to pay $22.50 per week to petitioner for the support of the three children still living with her. A second weekly reduction of $7.50 occurred two years later when Glenda Darlene got married, and a final $7.50 reduction was made in late 1975 when Terry Lee became 18. Respondent continues to pay $7.50 per week for the support of Patty Jean.

These reductions in child support were initiated in the absence of the authority of a court order.

Petitioner filed a petition on December 8, 1977, for child support arrearage. At the hearing on the petition respondent defended his payment practices by explaining that as a child left home petitioner was no longer entitled to receive support for that child. Thus, when Billy Irvin joined the Army, Glenda Darlene got married and Terry Lee left home by his 18th birthday, respondent lowered his weekly payment by $7.50

respectively. According to him, $7.50 represented the amount of his support obligation per child per week under the decree.

There was no dispute with respect to the departure of Billy Irvin and Glenda Darlene from home; however, petitioner contradicted respondent's testimony when she stated that Terry Lee was still living at home with her when respondent made his final support reduction.

Respondent testified further that, except for one instance, petitioner never made any demands or requests for past-due child support. The one instance was approximately a year before the commencement of this action when respondent was hospitalized for burn injuries. Although her request concerned a two-week period during respondent's confinement in which she received no payments, she never expressed any dissatisfaction with the payments themselves.

Petitioner denied this in her testimony. She stated that on one occasion prior to respondent's hospitalization she requested the support money that respondent withheld after the children left home.

In a judgment entered on April 20, 1978, the trial court found respondent in arrears for reducing the support payments without leave of court in violation of the divorce decree and ordered him to pay petitioner $8,593. This amount represented the total arrearage from respondent's first support reduction in 1966 up to the hearing date on the petition, or February 23, 1978. The court also assessed against him $2,120.78 in interest on the unpaid support.

Initially, respondent contends on appeal that by virtue of section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(c)) the trial court erroneously ordered him to pay child support arrearage where that arrearage consisted entirely of support money which accrued after the emancipation of three of the children. In support of this contention respondent argues that since the petition for arrearage was filed after October 1, 1977, this cause is controlled by the new Act in general (Ill. Rev. Stat. 1977, ch. 40, par. 801(a)) and section 510(c) in particular. Section 510(c) provides in part:

"(c) Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child * * *."

Respondent asserts that Billy Irvin, Glenda Darlene and Terry Lee became emancipated for purposes of section 510(c) the moment they permanently left home. Therefore, on the basis of section 510(c) respondent concludes that the order requiring him to pay child support arrearage was improper.

Petitioner claims that section 510(c) is not applicable here because the language of the statute refers only to a singular child. Under her interpretation, this section would relieve respondent of his support

obligations only when the last child, Patty Jean, becomes emancipated. Petitioner points out that the record reveals that Patty Jean is still residing at home with her. She contends that this cause of action is controlled by *Doty v. Doty* (1977), 45 Ill. App. 3d 213, 359 N.E.2d 784, where this court held that a spouse could not automatically and without leave of court reduce child support when a child reached majority.

■■ We agree with the position that this cause falls within the ambit of section 510(c) and find no merit to petitioner's contention that this section applies only where one child is receiving support. Her interpretation totally ignores the statutory mandate which requires that statutory language used in the singular be extended to include the plural. Ill. Rev. Stat. 1977, ch. 131, par. 1.03.

However, despite the applicability of section 510(c), we cannot endorse respondent's view that this section completely relieves him of all support responsibility for his emancipated children. This section cannot disturb any part of the arrearage pertaining to support installments which became due prior to October 1, 1977, the effective date of the Illinois Marriage and Dissolution of Marriage Act. Rather, this section can only relieve respondent of that portion of the arrearage representing: (1) support payments which became due on or after October 1, 1977, for the children who were emancipated prior to October 1, 1977; and (2) support payments which became due on or after the emancipation of any child whose emancipation occurred on or after October 1, 1977.

■■ The support installments which became due before October 1, 1977, are governed by the previous divorce act and its attendant case law. With respect to these installments, we find *Doty v. Doty* (1977), 45 Ill. App. 3d 213, 359 N.E.2d 784, apposite to the present case. Under the divorce decree in *Doty*, the father was ordered to pay $40 per week for the support of his four children until further order of the trial court. However, as each child reached majority the father reduced the weekly payment on a *pro rata* basis without permission of the trial court. He relied on *Snip v. Snip* (1962), 35 Ill. App. 2d 427, 183 N.E.2d 175, in arguing that the support payments were self-terminating when a child reached majority. In refusing to follow *Snip*, this court noted that the same court which wrote the *Snip* opinion later held in *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633, that support payments which were for all the children collectively could not be reduced *pro rata* automatically as each child reached majority.

■ As in *Doty*, the case under consideration involved a collective support payment which was to continue until further order of the court. The only factor distinguishing this case from *Doty* is that respondent's reduction in support was precipitated by the emancipation of his children rather than their reaching majority. Nevertheless, the rationale of *Doty*

applies to the present case, and we hold that the support obligations which were in effect until further order of the court did not self-terminate when the children being collectively supported became emancipated.

■ Since the support payments were not self-terminating upon the emancipation of the children, the installments vested as they became due and are not subject to modification by any court. *Doty v. Doty; Escott v. Escott* (1975), 26 Ill. App. 3d 417, 325 N.E.2d 395; *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59; *Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 202 N.E.2d 139.

We accordingly affirm that part of the judgment referring to support payments which came due prior to October 1, 1977, and, pursuant to section 510(c), reverse that part of the judgment based upon support payments which came due after that date. Although it is apparent from the record that Billy Irvin and Glenda Darlene became emancipated prior to October 1, 1977, we note that the testimony is in dispute with respect to Terry Lee's emancipation. Respondent testified that Terry Lee was not living with his mother when he turned 18 in 1975, and petitioner testified to the contrary. We therefore remand this cause to the trial court with directions that a finding be made as to when, if at all, Terry Lee became emancipated and for modification of the judgment in accordance with such finding.

■ Another issue for consideration is whether petitioner's claim for arrearage is barred by the equitable defenses of laches and equitable estoppel.

This court in *Doty v. Doty* (1977), 45 Ill. App. 3d 213, 215, 359 N.E.2d 784, 786, quoting *Baldwin v. Baldwin* (1974), 21 Ill. App. 3d 380, 382, 315 N.E.2d 649, 651, stated:

> " 'The third issue raised, to the effect that the back support payments are barred by the doctrine of laches, is not controlling in this case. In the case of *Gill v. Gill*, 8 Ill. App. 3d 625, 290 N.E.2d 897, the court specifically sets out the requirement necessary in order to set up a defense of laches to back support payments. Therein the court set out a four-part test for the application of laches which included among other things injury or prejudice to the defendant in the event relief is accorded to a complainant or the suit is held not to be barred. In this case, as similar to the case of *Atwater v. Atwater*, 18 Ill. App. 3d 202, 309 N.E.2d 632, there is no factual evidence to show prejudice or injury to the appellee as he is merely being asked to pay what he has owed for a number of years and there is no factual showing of prejudice or injury to him.' "

In the instant case respondent contends he is being prejudiced by "being assaulted by this accumulated judgment far in excess of Ten

Thousand Dollars." We, like the court in *Atwater*, are unimpressed by the argument that a spouse is "injured" because he might be forced to pay the support in one lump sum as opposed to the contemplated weekly installments, and we therefore hold that petitioner's claim is not barred by laches.

■ We are similarly unswayed by respondent's contention that petitioner's failure to complain about the reductions in support payments amounted to a *de facto* approval of the reductions and thereby caused respondent to act to his detriment in reliance of this approval. We refuse to hold that her silence with respect to reminding him of his outstanding legal obligation to contribute to the support of his children constitutes an act sufficient to invoke the doctrine of equitable estoppel and bar her claim.

Finally, respondent asserts that the trial court abused its discretion in awarding interest on the arrearage. We disagree.

■■ A decree of divorce which provides for weekly payments of child support is a money decree (*Gregory v. Gregory*), and a court may assess interest at the statutory rate on unpaid installments from the due date of each individual installment until its satisfaction, even though the decree does not expressly provide for such interest (*Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 323 N.E.2d 571). Although the record indicates that respondent would be burdened somewhat financially by the interest award, we cannot say that the trial court abused its discretion in making the assessment.

However, the amount of interest awarded was based on the total arrearage found at trial and does not accurately correspond to the support installments actually owing in view of our application of section 510(c) to this cause. Accordingly, we remand for a recomputation of interest consistent with this opinion.

Petitioner has petitioned the trial court and this court to direct that respondent pay all her legal fees incurred in her defense of this appeal pursuant to section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par 508(a)(3)). We grant her petition and order payment of reasonable attorney's fees which directly pertain to the defense of this appeal. We therefore direct the trial court on remand to conduct a hearing in order to ascertain the amount of attorney's fees which respondent must pay.

We would finally note that the judgment order directing respondent to pay the support arrearage and interest makes no provision for payment other than by lump sum. When taking into consideration respondent's financial status as revealed in the record, we feel that a lump sum payment of the arrearage, interest and petitioner's reasonable appellate

attorney's fees would work a severe hardship on him. Under the circumstances, we find that fairness requires a hearing on an equitable manner of payment of the amount found due.

For the foregoing reasons, the judgment is affirmed in part, reversed in part and remanded with directions.

Affirmed in part; reversed in part and remanded.

G. J. MORAN, P. J., specially concurring:

I concur in this opinion, but I would have preferred to affirm the trial court *in toto*.

I do not believe that section 510(c) of the new Illinois Marriage and Dissolution of Marriage Act compels an automatic *pro rata* deduction in a case where a trial court enters a support order for all of the children collectively. In this case the wife's expenses did not decrease *pro rata* as each child became of age. If a party obligated to pay a collective sum for several children desires to have the payment diminished proportionately as each child becomes of age, he or she should be required to file a petition in the trial court asking for that relief. This gives the opposing party the opportunity to seek a new award to reflect the present circumstances.

Mr. JUSTICE KARNS, dissenting:

I dissent in part from the majority opinion for the same reasons expressed by me in my dissent in *Doty v. Doty*.